# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 14, 2010

No. 09-40575

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEE ROY GARCIA,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, SMITH, and CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Lee Garcia was convicted, following a bench trial, of possessing with intent to distribute more than five kilograms of cocaine. On appeal, he challenges the denial of his motion to suppress the cocaine that officers found secreted inside stereo speakers in the cab of his truck. He also appeals his sentence, noting a discrepancy between the oral pronouncement and the written judgment. We affirm the conviction, which followed the denial of a motion to suppress. We va-

No. 09-40575

cate the sentence in the written judgment and remand for re-sentencing and for the correction of a clerical error.

I.

Texas Department of Public Safety ("DPS") officers searched Garcia's commercial truck while performing inspections at a weigh station. Garcia first caught the officers' attention because he appeared overly friendly and cooperative when told he had been selected for a more thorough 'level two' inspection. According to one of the officers who later testified, most drivers are frustrated by the delays caused by level two inspections.

While inspecting Garcia's paperwork, the officers noticed some items that gave them cause for concern. They learned, based on Garcia's logbook and by questioning him, that on the previous day he had picked up a load of tomatoes but had immediately parked his truck and did not begin to transport the shipment until eighteen hours later. According to the officers, that behavior was abnormal, because Garcia would have been forced to run his refrigerated truck all night to keep the tomatoes at the appropriate temperature, which is costly, and because drivers generally want to deliver perishable goods as quickly as possible. Garcia had no explanation for the delay.

The logbook revealed that Garcia had recently taken multiple days off, even though he reported that truck driving was his primary source of income. The officers found that suspicious, because generally drivers do not take off large amounts of time unless there is a reason; Garcia offered none. He also said he was delivering the tomatoes to New Jersey and New York, but his bill of lading revealed that he was scheduled to make a delivery only in New Jersey. When questioned about his odd behavior and the inconsistencies, Garcia showed signs of nervousness, including shaking his knee, looking down, and attempting to talk to another truck driver.

No. 09-40575

One of the officers then asked Garcia whether the truck contained "anything illegal." Garcia responded that it did not and gave the officers permission to search the truck and trailer. While searching the cab, the officers noticed fresh tool marks on the screws securing the stereo speakers, suggesting that the screws had been recently removed. The officers also found a toolkit in the cab containing a screwdriver bit that fit the screws. Using that screwdriver, they removed the screws, took the speaker cover off, and found bundles containing nearly 30 kilograms of cocaine inside the void behind the cover. Garcia was arrested and charged with violating 21 U.S.C. § 841(a)(1) and (b)(1)(A).[1]

Garcia moved to suppress the cocaine on the grounds that neither probable cause nor voluntary consent supported the search and that even if he did consent, the search exceeded the scope of consent. The district court denied the motion. The court first found that Garcia consented to the search of the truck and trailer and that the consent was voluntary. The court then considered whether the search exceeded the scope authorized by Garcia. After considering all the factors known to the officers at the time they started the execution of the search, the court determined that the search was within the scope.

Immediately following the suppression hearing, the court held a bench trial and found Garcia guilty. The court orally pronounced a 120-month sentence. The written judgment, however, shows a 121-month sentence.

II.

Garcia contends that by removing the cover from the speakers, the officers exceeded the scope of his consent and that the district court thus erred in deny-

---

[1] Section 841(a)(1) and (b)(1)(A) makes it unlawful knowingly or intentionally to "possess with intent to . . . distribute . . . a controlled substance . . . . In the case of a violation . . . involving . . . 5 kilograms or more of . . . cocaine . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life."

ing the motion to suppress. We review the denial of a motion to suppress in the light most favorable to the prevailing party, here the government. *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 666 (5th Cir. 2003). Factual findings are reviewed for clear error, and legal conclusions are reviewed *de novo. Id.* The scope of consent to search is a question of law. *Id.*

The Fourth Amendment proscribes unreasonable searches and seizures. A search not based on a warrant may still be reasonable if based on probable cause or, as here, consent. *Id.* (citing *United States v. Ross*, 456 U.S. 798, 809 (1982); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). When conducting a warrantless search of a vehicle based on consent, officers have no more authority to search than it appears was given by the consent. *Mendoza-Gonzalez*, 318 F.3d at 666-67. The scope of consent is determined by objective reasonableness ––what a reasonable person would have understood from the exchange between the officer and searched party––and not the subjective intent of the parties. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *Mendoza-Gonzalez*, 318 F.3d at 667.

The scope of a consensual search may be limited by the expressed object of the search. *Jimeno*, 500 U.S. at 251. But where, as here, an officer does not express the object of the search, the searched party, who knows the contents of the vehicle, has the responsibility explicitly to limit the scope of the search. *Mendoza-Gonzalez*, 318 U.S. at 667. Otherwise, an affirmative response to a general request is evidence of general consent to search. *Id.* Garcia did not qualify his consent to the officers, who therefore had general consent to search the truck.

General consent to search a vehicle does not, however, give an officer *carte blanche* over the vehicle. *Id.* at 669. A search must still be reasonable, given the totality of the circumstances. *Id.* The search here was reasonable. When the officers requested permission to search the truck after asking Garcia whether he was carrying "anything illegal," it was natural to conclude that they might look

4

No. 09-40575

for hidden compartments or containers.

This case is similar to *Mendoza-Gonzalez* and *United States v. Crain*, 33 F.3d 480 (5th Cir. 1994). In both, officers searched vehicles pursuant to general consent. In *Mendoza-Gonzalez*, an officer cut open a taped box in the trailer of a commercial truck and discovered bricks of marihuana. In *Crain*, an officer opened a twisted and rolled up paper bag found under the driver's seat of a car containing crack cocaine base. On *de novo* review, we found both searches reasonable. Similarly, in *United States v. Flores*, 63 F.3d 1342 (5th Cir. 1995), on plain error review, we upheld the denial of a motion to suppress a stash of cash discovered when, pursuant to a signed, written general consent to search a car, including its containers and contents, officers removed interior panels from a car.

Moreover, this case is unlike *United States v. Ibarra*, 965 F.2d 1354 (5th Cir. 1992) (en banc) (per curiam) (affirming by equally divided court), which upheld the suppression of items discovered after police smashed through floorboards with a sledgehammer to reach the sealed-off attic in a house.[2] One-half of our court would have held that such "structural demolition" was unreasonable and thus outside the scope of consent. *Id*. at 1357. Here, however, there was no analogous structural demolition; in transporting the cocaine, Garcia knew the speaker cover was easy to unscrew and replace without damaging the cab.[3]

---

[2] Decisions by an equally divided en banc court are not binding precedent but only affirm the judgment by operation of law. *Mendoza-Gonzalez*, 318 F.3d at 667 n.5; *United States v. Knutson*, 113 F.3d 27, 28 nn.1, 6 (5th Cir. 1997).

[3] *See also United States v. Dominguez*, No. 96-40367, 1996 WL 731574 (5th Cir. Dec. 3, 1996) (unpublished) (reasoning that unscrewing a sheet rock panel from a house ceiling to reveal a hidden crawl space, causing no property damage, was reasonable and thus within the scope of general consent to search the house); *United States v. Ferrer-Montoya*, 483 F.3d 565, 568-69 (8th Cir. 2007); *United States v. Garrido-Santana*, 360 F.3d 565, 576 (6th Cir. 2004); *United States v. Ramstad*, 308 F.3d 1139, 1146-47 (10th Cir. 2002); *United States v. Zapata*, 180 F.3d 1237, 1243 (11th Cir. 1999); *United States v. Torres*, 32 F.3d 225, 231-32 (7th Cir. (continued...)

5

No. 09-40575

In sum, the search of Garcia's truck cab was reasonable. The district court did not clearly err in denying the motion to suppress.

III.

Garcia observes that there is a conflict between the prison term orally pronounced at the sentencing hearing and the term memorialized in the written judgment, and the government agrees. The statutory minimum is 10 years (120 months. The guideline imprisonment range is 121-151 months. At oral sentencing, however, the court misstated the guideline range as 120-151 months. Apparently on the basis of that confusion, the court went on to explain that "I believe that a sentence at the lowest end of the advisory guideline range would be a reasonable sentence. Therefore I am going to sentence you to 120 months." The later, written judgment, however, showed a 121-month sentence.

Where the orally-imposed sentence conflicts with the written judgment, the oral pronouncement controls. *United States v. Bigelow*, 462 F.3d 378, 381 (5th Cir. 2006). Generally, we remand and direct the court to amend the written judgment to conform to the oral pronouncement. *See United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001). If, however, there is merely an ambiguity between the oral and written sentences, we review the entire record to determine the court's intent. *Id.*

The oral pronouncement, read as a whole, shows that there is an ambiguity rather than a conflict. Although the court said it was imposing a 120-month sentence, it also stated that it wished to give a sentence at the "lowest end" of the guidelines range. The bottom of the guideline range was 121 months––the sentence reflected in the written judgment.

Examining the record to determine the court's intent, *see United States v.*

---

[3] (...continued) 1994).

No. 09-40575

*English*, 400 F.3d 273, 276 (5th Cir. 2005), does not resolve the ambiguity. The court did not plainly articulate the correct guideline range, and it is not certain, from the discussion, whether the court believed a 120-month sentence more appropriate than a within-guideline sentence. Given the discrepancy between the written judgment and the oral pronouncement, as well as the ambiguities in the oral explanation, we vacate the sentence and remand for resentencing. *See United States v. Garza*, 448 F.3d 294, 302 (5th Cir. 2006).

IV.

There is also a clerical error. Garcia pleaded not guilty, and his guilt was determined by the court after a bench trial, but the judgment erroneously states that he pleaded guilty. On remand, the district court must correct the error. FED. R. CRIM. P. 36; *United States v. Powell*, 354 F.3d 362, 371-72 (5th Cir. 2003).

In summary, the conviction is AFFIRMED. The sentence is VACATED and REMANDED for resentencing..